Lillian FREIMAN et al., Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY, a Texas corporation, et al., Defendants.

Donald M. GREEN et al., Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY, a Texas corporation, et al., Defendants.

Leon J. WISE and Lenora R. Wise, Plaintiffs,

v.

TEXAS GULF SULPHUR COMPANY et al., Defendants.

Nos. 65 C 691, 65 C 959, 65 C 1186.

United States District Court
N. D. Illinois, E. D.

Sept. 30, 1965.

James P. Chapman, Deborah N. Rosen, Robert J. Downing, William M. Ward, James B. Sloan, Chicago, Ill., for Freiman et al.

Lowell E. Sachnoff, Joseph Gordon and William Weaver, Epstein, Manilow

& Sachnoff, Chicago, Ill., for Green et al.

Burton R. Abrams, Caliendo, Engelstein & Abrams, Chicago, Ill., for Wise et al.

Leo F. Tierney and Ned Robertson, Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., and Chester Bordeau, White & Case, New York City, for defendants.

WILL, District Judge.

Each of the above-captioned actions are brought by former stockholders of the defendant corporation, Texas Gulf Sulphur Company. The complaints of Mrs. Freiman in 65 C 691 and Mr. Green in 65 C 959 are class actions brought under Rule 23(a) (3), F.R.Civ.P., in which the several claims of some sixty-six persons, many of whom are not residents of this District, are joined. While there are some variations between the three complaints, each in substance alleges that the defendant corporation and eight corporate officers (named as individual defendants) entered into an illegal conspiracy to depress the market for Texas Gulf Sulphur common stock and, by fraudulent misrepresentations and other activities, induced the plaintiffs to sell their shares of stock at a price substantially lower than that which would have been obtainable had the alleged conspiracy not existed. Plaintiffs assert that their actions are based on both common law principles and the provisions of §§ 9(a) and 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78i(a) and 78j(b). The factual assertions of the complaints all revolve around the conduct of a mineral exploration program of the defendant corporation in Timmins, Ontario, Canada.

The defendants have moved to transfer these actions to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1404(a). In support of their motion, defendants state that twenty-nine related complaints, including several which,

like the Freiman and Green actions in this Court, purport to be actions on behalf of all persons similarly situated, are now pending in the Southern District of New York. While motions to consolidate any or all of these actions are not due to be filed until a later date, the New York court has already taken steps to coordinate pretrial discovery by means of a joint pretrial conference and a uniform pretrial order.

In addition, the defendants point out that the essential questions in all of the cases involve witnesses and documentary evidence located in New York and, in view of the harmony of interests demonstrated by the various pleadings, transfer of all cases to the New York forum will avoid needless duplication of pretrial discovery and permit expeditious and uniform consideration of the issues presented.

In particular, the defendants rely on the proposition that the transfer of all related actions to one court is a necessary corollary of the practice sanctioned by Rule 23(a) (3), permitting joinder of actions involving parties whose rights are not truly joint (as in the "true" class action), but rest on common issues of law and fact (generally referred to as "spurious" class actions). One effect of the spurious class action is to enable the courts to avoid the wasteful duplication of judicial effort inherent in multiple litigation, with its attendant burden on other litigants whose cases must "mark time" in the process. See Kainz v. Anheuser-Busch, Inc., 194 F.2d 737, 744 (7 Cir. 1952), cert. denied, 344 U.S. 820, 73 S.Ct. 17, 97 L.Ed. 638 (1952). Where, as here, the occurrence giving rise to litigation involves numerous potential plaintiffs situated throughout the country and engenders a multiplicity of spurious class actions, the beneficial effects of the modern rule cannot be realized unless the multiple class actions can be brought together in a single forum. The balance of conveniences, and particularly, the in-

terests of the courts in the effective administration of justice, weigh heavily in favor of the application of 28 U.S.C. § 1404(a) to accomplish this end. See Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

■ Plaintiffs apparently recognize that their claim to a suit in the forum of their choice is weakened by the pendency of related class actions here and in New York. They point out, however, that the Supreme Court's opinion in Koster, supra, involved a *true* class action and suggest that the balance of conveniences are somehow different when the plaintiffs are a "spurious" class. Contrary to the plaintiffs' suggestion, the distinction between true and spurious class actions weighs more heavily in favor of transferring all so-called "spurious" class actions to a single forum.

■ The true class action results in an adjudication binding on all persons coming within the class. The issues involved are determined in a single proceeding and the entire controversy ended by a single decision. The spurious class action is binding only upon those actually before the court and thus, unless the cases are in one court where they may be consolidated, a single, conclusive decision is impossible. Moreover, the interests of justice in general, and the interests of the various litigants, in particular, suggest that the possibility of inconsistent results be avoided whenever possible. This factor is of particular importance in cases such as these, where the courts are called upon to resolve complex legal questions of substantial importance. The arguments of able counsel on behalf of all the parties should be heard before a decision is reached. The administration of justice will be needlessly complicated if the court first concluding its proceedings in these matters is called upon to reconsider its decision on account of arguments or evidence presented by other parties in related cases heard elsewhere.

■ Plaintiffs rely heavily on the fact that the Securities Exchange Act of 1934 contains a "special venue provision", permitting suit to be brought in any district in which any act or transaction constituting the violation occurred. Securities Exchange Act of 1934, § 27, 15 U.S.C. § 78aa. They suggest that the statutory provision establishes a "privilege", limiting application of the doctrine of forum non conveniens to those cases in which the privilege has been abused by the plaintiff.

In support of this contention, plaintiffs cite Ferguson v. Ford Motor Co., 89 F.Supp. 45 (S.D.N.Y.1950). While the opinion in Ferguson refers to a similar venue provision in the anti-trust laws as a "privilege" and suggests that § 1404(a) may be used to correct "abuses" of that privilege, it is clear from the entire opinion that the court did not intend to suggest that application of § 1404(a) in cases such as this was limited to instances where the plaintiffs could be found guilty of "abuse". Rather, the court in Ferguson proceeded to consider the § 1404(a) motion by applying the traditional factors of convenience of the parties and the interests of justice. While the special provisions of 15 U.S.C. § 78aa are entitled to consideration, the preponderance of relevant factors requires transfer of these actions.

Plaintiffs' arguments in opposition regarding the convenience of the respective forums are insubstantial. They point out that persons from Timmins, Ontario and one individual residing in Utah may be called as witnesses. To be sure, Timmins, Ontario may be no less convenient to Chicago than it is to New York. However, one journey from Timmins to New York is undeniably more convenient than separate journeys to each of the courts in which related actions are pending. Similarly, plaintiffs oppose transfer on the ground that requiring them to travel to New York constitutes an "unfair burden" in that they may have to call local brokers, publishers of financial informa-

tion and representatives of the Midwest Stock Exchange to testify as to information published regarding Texas Gulf Sulphur's exploration, the effect on the market for Texas Gulf stock and plaintiffs' reliance on such information.

While the circumstances of the alleged fraud, the reliance placed on certain information and the specific transactions involved are ultimately essential elements of each plaintiff's case, the benefits which will accrue from the transfer of these actions and the resulting pretrial coordination and possible consolidation not only outweigh the speculative hardship to the plaintiffs, but may well serve to obviate the problems entirely. It would be unrealistic to determine the instant motion on the assertion that the central issues to be litigated in these actions concern such questions as whether a certain newspaper article was in fact published and read by a given plaintiff prior to a sale of stock. Moreover, many of the matters referred to by the plaintiffs may well be dealt with by means short of calling witnesses at a trial to lay foundations for documentary evidence. Much, if not all, of the evidence of local brokers, publishers of financial information, representatives of the Midwest Stock Exchange and others, can be secured by appropriate depositions and related pretrial procedures. The expeditious and coordinated treatment of actions such as these at the pretrial stage is a substantial factor in determining the future course of the litigation. The interests of justice require that such an opportunity be availed of.

While some acts giving rise to this litigation may have occurred in this District, these acts are not the central elements involved in the controversy. In addition, as previously indicated, a number of the plaintiffs in the Freiman and Green actions have no contact with this District and, in fact, reside in communities equally, if not more convenient to New York. The essential witnesses and corporate records are located in New York, as are a majority of all plaintiffs bringing actions similar to those filed here.

In view of the foregoing, defendants' motion pursuant to 28 U.S.C. § 1404(a) will be granted, and the above-captioned causes will be transferred to the United States District Court for the Southern District of New York. An appropriate order will enter.