Howard **POLIN** on behalf of himself and on behalf of all others similarly situated shareholders of Conductron Corporation and derivatively, on behalf of Conductron Corporation, Plaintiff,

v.

**CONDUCTRON CORPORATION** et al., Defendants.

Civ. A. No. 69–1730.

United States District Court,
E. D. Pennsylvania.

March 24, 1972.

See also D.C., 311 F.Supp. 362.

Dilworth, Paxson, Kalish, Levy & Coleman, by William T. Coleman, Jr., Philadelphia, Pa., for plaintiff.

Duane, Morris & Heckscher, by Robert Pratter, Philadelphia, Pa., for Conductron.

Morgan, Lewis & Bockius, by Howard L. Shecter, Philadelphia, Pa., and Bryan, Cave, McPheeters & McRoberts, by Veryl L. Riddle, St. Louis, Mo., for McDonnell Douglas and others.

Drinker, Biddle & Reath, by Patrick T. Ryan, Philadelphia, Pa., for Olsen, Cutrona, Mary Siegel, Prosnitz.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

The above captioned case has been before me since the original three count complaint was filed on July 28, 1968.

Countless orders, arguments and appeals later, the present issue is whether the case should be transferred to the Eastern District of Missouri pursuant to § 1404(a), 28 U.S.C. Section 1404(a) which provides in part as follows:

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought."

The balancing process in this case has been the closest and most difficult that I have ever encountered. I find that the defendants have met their burden of proof by the barest scintilla and accordingly that the case should be transferred to the Eastern District of Missouri. A brief history of the motion to transfer this case is a prerequisite to a complete understanding of my decision to transfer.

On February 4, 1970, I entered an Order that until all discovery had been finished the defendants' motion to dismiss or in the alternative to transfer the matter to the Eastern District of Missouri would be denied. On March 31, 1970, I denied the defendants' motion to certify the Order of February 4, 1970 pursuant to 28 U.S.C. § 1292. On April 8, 1970 the defendant petitioned the United States Court of Appeals for the Third Circuit for a writ of mandamus, to order this court to either transfer this case pursuant to 28 U.S.C. § 1404(a) to the Eastern District of Missouri or to rule finally upon the motion for transfer prior to the commencement of discovery on the merits of the action. McDonnell Douglas Corp. v. Polin, 429 F.2d 30 (3rd Cir. 1970). On July 10, 1970, the Court of Appeals for the Third Circuit vacated my Order of February 4, 1970 and held that discovery only which was directly related to transfer, and not related to the merits of the cause of action, should be completed. The Court of Appeals stated the following:

" . . . we feel it is not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of the preliminary question of transfer. Even if on the motion to transfer certain factual questions appear, and though the inquiries may overlap, they should not be merged and wise discretion should be exercised in preventing such discovery from leading into the merits of the claim." McDonnell Douglas Corp. v. Polin, *supra*, at 30–31.

The Court of Appeals denied reargument on August 19, 1970. On September 28, 1970, I ordered counsel to complete discovery in accordance with the Court of Appeals mandate. Argument was held on the defendant's motion to

transfer pursuant to 28 U.S.C. § 1404(a) on July 21, 1971.

Since the oral argument of this matter, counsel for all parties have continued a written argument by means of several letters to this Court, the most recent of which is dated November 21, 1971.

The plaintiffs assert derivative claims in behalf of the defendant corporations and class actions against the corporations and their respective officers and directors. The complaint is in five counts. Count I alleges derivative and class action claims arising out of the acquisition of Conductron by McDonnell Douglas and involving the preparation of an allegedly false and misleading proxy statement. Count II states a derivative claim on behalf of Conductron for breach of fiduciary duties. Count III alleges a class claim against the officers and directors of Conductron involving the preparation and mailing of misleading proxies and other documents. Count IV states derivative and class claims arising from facts and circumstances arising after the merger of Conductron and McDonnell Douglas in the setting of the exchange rate for Conductron shares in the statutory merger of Conductron and McDonnell. Count V asserts derivative and class claims for breach of fiduciary duties arising out of post merger conduct of the officers and directors of McDonnell and Conductron. The original complaint was filed on July 28, 1968. With the exception of the five defendants who have filed answers in the Eastern District of Pennsylvania, all other defendants on September 12, 1968 filed a motion to dismiss or in the alternative to transfer the action to Eastern District of Missouri. On May 28, 1971, the plaintiff filed an amended complaint which added Counts IV and V to the original claims.

■ The first requirement for a transfer under § 1404(a) is that the action can be transferred only to a district where the action might have been brought originally, that is, at the time the suit was originally commenced. Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In the instant case, jurisdiction and venue are based on § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. There is no question that both corporate defendants have their headquarters in the St. Louis area, at least seven of the individual defendants live in the St. Louis area,[1] most of the alleged illegal acts occurred in St. Louis, the allegedly illegal proxy statements were prepared in St. Louis, and this action could have been commenced in St. Louis under the broad special venue provisions of § 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa).

■ The second consideration under § 1404(a) is whether the proposed transfer would be for the convenience of the parties and witnesses and in the interest of justice. The plaintiff's choice of a proper forum is a paramount consideration and that choice is not to be lightly disturbed. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3rd Cir. 1970). The burden is on the moving party to establish that "a balancing of proper interests weigh in favor of the transfer (citations omitted), and 'unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail.'" (Citations omitted.) Shutte v. Armco Steel Corp., 431 F.2d at 25. While both under § 1404(a) and under the predecessor doctrine of *forum non conveniens*, the plaintiff's choice of forum is to be given great weight. The weight accorded the plaintiff's choice is reduced where, as in the instant case, the cause of action states grounds for recovery of a class and derivative nature. Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). In the *Koster* Case, the Supreme Court held that the weight to be accorded a plaintiff's choice of forum is reduced in a de-

---

1. See Note 4, *infra*.

rivative action where "what forum is appropriate * * * may require consideration of its relation to the whole group of members and stockholders whom plaintiff volunteers to represent as well as to the nominal plaintiff himself." Koster v. (American) Lumbermens Mutual Casualty Co., supra, 330 U.S. at 526, 67 S.Ct. at 832. The Court went on to state that ". . . where there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. at 524, 67 S.Ct. at 832 (1947). This rule that the plaintiff's choice of forum is accorded less weight has been extended to class actions. Schneider v. Sears, 265 F.Supp. 257, 266 (S.D.N.Y.1967).[2] Thus, this court views the appropriate legal test as being that the party moving the transfer, here the defendant, must meet the strong burden imposed by the *Shutte* case, reduced to account for the fact that the showing need not be so great where, as here, the complaint states derivative and class claims.

In determining whether the defendant has met the requisite burden here, one must examine the factors which are relevant under § 1404(a), whether the transfer is "for the convenience of parties and witness" and whether the transfer is in the "interest of justice". The criteria for decision under § 1404(a) are set forth in United States v. General Motors Corp., 183 F.Supp. 858, 860 (S.D.N.Y.1960) as the following:

"relative ease and access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of witnesses; possibility of a view, if appropriate; and all other practical problems that would make the trial of a case easy, expeditious and inexpensive . . . it is also appropriate to give some consideration to the relative state of trial calendar congestion."

The United States Supreme Court in Van Dusen v. Barrack, 376 U.S. 612, 643–645, 84 S.Ct. 805, 823–824, 11 L.Ed. 2d 945 (1964) summarized some of the factors to be considered in deciding a transfer motion under § 1404(a) as relative ease and practicality of trying cases in alternative forums and the location of needed witnesses. In viewing the factual circumstances of the instant case, I have relied on both the Supreme Court view of the factors and that espoused in United States v. General Motors adopted by many district courts since that decision.[3]

In order to determine whether the transfer would be for the convenience of the parties and witnesses and in the interest of justice, one must first analyze separately each of the components which affect the specific parties. The plaintiff, Howard Polin, is a resident of the Eastern District of Pennsylvania while the defendants are located in New York, St. Louis, California and Michigan. Both the McDonnell Douglas Corporation and Conductron Corporation are headquartered in the Eastern District of Missouri (E.D.Mo.). At least seven of the individual defendants live in the Eastern District of Missouri.[4]

None of the party defendants are residents of this district. Of the other

---

2. Other cases holding that the plaintiff's choice of forum is accorded less weight in a derivative or class suit are: Triangle Industries v. Kennecott Copper Corp., 325 F.Supp. 150, 152 (E.D.Pa. 1971) (class action); Firmani v. Clarke, 325 F.Supp. 689, 691 (D.Del.1971) (class action); Silverman v. Wellington Management Co., 298 F.Supp. 877, 879 (S.D.

N.Y.1969) (derivative suit); Fogel v. Wolfgang, 48 F.R.D. 286, 290 (S.D.N.Y. 1969) (class action).

3. See, e. g., cases cited note 2, *supra.*

4. In the Brief submitted on behalf of McDonnell Douglas Corporation and others in support of the motion to trans-

non-party witnesses (defendant has indicated approximately ninety will be called at trial), seventy-five live in the St. Louis area, (N.T. 24–25) and it would clearly be more convenient if they could have the trial in the Eastern District of Missouri as they could testify with a minimum of disruption to their duties with the company. Further, the three party defendants who live and work in California could pursue their duties at the corporate headquarters in the St. Louis area during the course of the trial.

Finally, both parties have urged this Court to consider the large number of documents which would be required during the course of the trial. The defendants claim that almost all of these papers are located in the St. Louis area and to transport either the originals or even copies to Philadelphia for discovery or trial would place a heavy burden on them. The plaintiffs respond that the originals will not be used and all that will be required are photocopies which would have to be transported to the Court in any event. The location of the documents and their vast bulk are important factors in deciding the transfer issue. In fact, if there were no other factors favorable to defendant's motion, the availability of photocopying would preclude their winning the transfer. Nevertheless, I find that the severe burden and expense which would be placed on the defendants for photocopying or making the originals available in Philadelphia for further discovery or trial is a significant factor supporting the defendants' claim for transfer to Missouri.[5]

Another important factor in deciding where the balance of the convenience lies is a determination of the source from which the bulk of the evidence will come. As noted above, the source of the many documents needed for trial will be the defendants' file rooms. Likewise, the defendants will be providing almost all of the testimony surrounding the challenged transactions. As noted in a recent opinion by Judge Latchum in granting a transfer motion under § .1404(a) in a class action suit similar to the instant case:

"Further, in a class action such as this the testimony offered by the plaintiff is likely to be minimal, probably no more than a recitation of the circumstances under which he purchased his stock. The critical evidence, both testimonial and documentary, to sustain the claims of the complaint must come from other sources, particularly from documents within the defendants' control, all of which are located in the [transferee district]." Firmani v. Clarke, 325 F. Supp. 689, 692 (D.Del.1971)

This reasoning applies with equal weight to a derivative suit. Thus, on balance, the convenience of the parties and witnesses here point in the direction of a trial in St. Louis.

I recognize that adjudications on close questions for transfer under § 1404(a) contain unknown variables which nevertheless must be weighed in the adjudication, even though the Judge cannot precisely evaluate the magnitude of these variables. There is no more perfect example of this difficulty than the above

fer, they show that nine of the fourteen individual defendants live in the Eastern District of Missouri. However, at oral argument before this court of July 21, 1971, Counsel for Plaintiff, Mr. Coleman, stated that only seven defendants lived in the proposed transferee district. (N.T. 33–37.) I find the difference of no decisive consequence. It should be here noted that five of the individual defendants have filed answers in this district and have not moved to transfer the action.

5. *Accord*, Ralph Williams, Inc. v. Chrysler Corp. et al., 327 F.Supp. 469, 470–471 (E.D.Pa.1971); Triangle Industries, Inc. v. Kennecott Copper Corp., 325 F.Supp. 150, 152 (E.D.Pa.1971); *cf.* Herbst v. Able, 278 F.Supp. 664, 666–667 (S.D.N.Y. 1967) (motion for transfer denied because of availability of photocopies, but three of the party defendants resident of transferor forum).

mentioned document issue. Originally, I was inclined to require the parties to complete *all* discovery on the merits of the cause of action. After discovery on the merits, I would have been in a position whereby I would have been able to precisely estimate, rather than guess, the magnitude of the document problem, the scope of witnesses' inconvenience, and the actual need for the deluge of witnesses who at the pretrial stage are categorized as "key" witnesses. By the nature of the Court of Appeals remand, I do not have the data to make these precise judgments. Candidly, if the matter had not been remanded, I would have waited until such time as I had this specific information. I would have thus been able to make a more precise judgment on the transfer issue.

As I read the Court of Appeals precise remand, I am precluded from allowing any discovery of the merits. Thus, I am required to make a judgment on the motion to transfer without making any assessment of the merits or defenses which necessarily have not yet been developed in this case. Yet this preclusion creates a difficult paradox. How can I ascertain whether the many purported "key" witnesses are really the *actual* "key" witnesses for the defense unless I accept either defendants' assertion that ninety "key" witnesses will be needed and called at trial (N.T. 23, 24), or plaintiff's assertion that the defendant has not sufficiently delineated the issues on which each witness will testify so as to enable me to ascertain whether or not any of the ninety witnesses is in reality a "key" witness. (N.T. 30) Until there is some probe of the merits and of the defenses, how can I determine with reasonable precision whether merely hundreds or many thousands of documents will be required? How can I ascertain whether merely a few man hours or many thousands of man hours of testimony by key personnel would be required at trial?

The fact that the Court of Appeals was willing to issue a Writ of Mandamus indicated that the Court felt that the standards [6] which I originally used to assess a motion for transfer were perhaps either too favorable to the plaintiff or that judgments could be made on the partial record which does not yet encompass all the merits or defenses of the parties. Thus, upon consideration of the inferences which I deem to be inherent in the original remand, and upon consideration of all of the relevant factors, the defendants' motion for a transfer pursuant to 28 U.S. Code § 1404(a) is hereby granted.[7]

---

6. In reaching my decision, I have of course followed the decisions of the Court of Appeals, in placing a heavy burden on the moving party to show that the balance of convenience strongly weighs in his favor. Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3rd Cir. 1970).

7. This Opinion constitutes the prerequisite findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.