**1000**

D. NELSEN & SONS, INCORPORATED, an Illinois Corporation, and Daniel B. Nelsen, Jr., Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE COR- PORATION, Individually and as Receiv- er of the United States National Bank, Comptroller of the Currency, and the United States of America, Defendants.

No. 77 C 1395.

United States District Court, N. D. Illinois, E. D.

Oct. 13, 1977.

Edward Silber, Gene H. Hansen, Chicago, Ill., for plaintiffs.

Miles A. Cobb, Gen. Counsel, Burton L. Raimi, Deputy Gen. Counsel, Herbert A. Biern, Atty., Washington, D. C., for defend- ant F. D. I. C.

James P. Klapps, Asst. Chief, Tort Sec., Civ. Div., Eurich Z. Griffin, Trial Atty., Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendants Comptroller and the United States.

Thomas P. Sullivan, U. S. Atty., Antonio Jose Curiel, Asst. U. S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, Senior District Judge.

*Motion to Change Venue*

Plaintiffs D. Nelsen & Sons, Incorporated, and Daniel B. Nelsen, Jr., bring this action against the Federal Deposit Insurance Corporation ("FDIC") as the insurer of deposits and receiver of the failed United States National Bank, San Diego, California, California ("USNB"), against the Office of the Comptroller of the Currency ("Comptroller") as regulator of the USNB prior to its failure and against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* Plaintiffs seek, *inter alia*, $325,000 in monetary damages, allegedly resulting from "arbitrary, illegal and unconstitutional" actions taken by the FDIC upon the failure of the USNB.

Pending before the Court is defendants' motion to transfer the case from the Northern District of Illinois to the Southern District of California, the district of allegedly proper venue under 12 U.S.C. § 94, pursuant to 28 U.S.C. § 1406(a). Alternatively, defendants ask that the case be transferred to the Southern District of California "in the interest of justice," pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, defendants' motion is granted.

In April, 1971, plaintiffs and certain third parties were involved in litigation in the Circuit Court of Cook County, Illinois. At that time, the USNB issued a letter of credit (No. 70–236) to take the place of other security impounded by order of the Circuit Court. The letter of credit was made payable to the Clerk of the Circuit Court of Cook County upon the entry of a certain order favorable to plaintiffs. The letter was filed with the Court on April 23, 1971, pursuant to a court order. On July 23, 1976, an order of the Circuit Court was entered, directing payment of proceeds from the credit to plaintiffs, making USNB's obligation thereunder due and payable.

In October, 1973, in what was then the largest bank failure in this country's history, defendant Comptroller closed the USNB and appointed defendant FDIC as its receiver. Rather than liquidate and pay the insured deposits of the USNB, the FDIC chose to finance an agreement whereby the bank offering the highest premium through competitive bidding would purchase the saleable assets of USNB and assume certain of its liabilities. In addition, the FDIC authorized itself as receiver to enter into such an agreement. See 12 U.S.C. § 1823(e–1).

After the closing of the USNB, several holders of letters of credit brought suit in the Southern District of California, the home district of the USNB, alleging that their letters were improperly treated in that they were neither assumed nor paid by the highest bidding bank. The USNB transaction was also challenged in the District Court for the District of Columbia, but those actions were transferred to the Southern District of California upon motion of the FDIC.

In a flurry of litigation, five actions arguably similar to the case at bar were filed in the Southern District of California, five related actions against the United States under the Federal Tort Claims Act were filed in Washington, D. C. and stayed pending the outcome of the California litigation, and five cases in which letters of credit were paid, leaving a question of whether the FDIC owed additional interest, were also filed in the Southern District of California.

When plaintiffs were denied payment by the FDIC on their letter of credit, they filed this action on April 22, 1977. Plaintiffs allege the venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1402(b). *Complaint*, ¶ 8. Defendants move to transfer this action, arguing that the venue provision of the National Bank Act, 12 U.S.C. § 94, requires actions brought against the USNB to be brought in the Southern District of California. Defendants do not seek to have this cause dismissed for improper venue. See 28 U.S.C. § 1406(a).

■ 12 U.S.C. § 94, Venue of Suits, reads as follows:

> Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

Courts have repeatedly held that venue provisions of 12 U.S.C. § 94 are mandatory, not permissive. *Mercantile National Bank at Dallas v. Langdeau, Receiver*, 371 U.S. 555, 558–59, 83 S.Ct. 520, 9 L.Ed.2d 523 (1963); *National Bank of North America v. Associates of Obstetrics*, 425 U.S. 460, 461, 96 S.Ct. 1632, 48 L.Ed.2d 92 (1976) (per curium). It is undisputed here that the FDIC as receiver may claim the benefits of the venue provisions which are applicable to the insolvent USNB. *See, TPO Inc. v. FDIC*, 325 F.Supp. 663, 664–665 (S.D.N.Y.1971). It is further undisputed that federal courts have consistently interpreted 12 U.S.C. § 94 to require that lawsuits against a national bank be brought in the district where the bank may be established. 1 J. Moore, *Federal Practice*, ¶ 0.144[2.–1] (2d Ed. 1977).

Plaintiffs, in line with some treatise writers, (*See e. g.*, Note, *An Assault on the Venue Sanctuary of National Banks*, 34 Geo.Wash.L.Rev. 765 (1966); 15 C. Wright A. Miller & E. Cooper, *Federal Practice and Procedure*, § 3813 (1976)), invite this Court to escape from the arguably anachronistic venue provisions of 12 U.S.C. § 94. Given the facts in the case at bar, however, the Court is reluctant to deviate from the well worn path.

Plaintiff cites two possible results of an application of 12 U.S.C. § 94 which may give a court impetus to circumvent the statute. We note first that this is not a case in which the plaintiff is disadvantaged by the inability to "join two national banks in the same action . . . ." *Wright, Miller &*

*Cooper, supra*. Nor is this case one in which it is impracticable to sue a national bank in a distant forum, given the $325,000 plus interest in controversy. *Id.*

■ A finding of waiver is one mechanism a court may employ to avoid potentially harsh and archaic results of the venue provision. It is clear that defendants here did not fail to object to improper venue in a timely manner. *See, First National Bank of Charlotte v. Morgan*, 132 U.S. 141, 145, 10 S.Ct. 37, 33 L.Ed. 282 (1889). The thrust of plaintiffs' argument, therefore, is that the USNB, (correspondingly, the FDIC), waived its venue privilege by voluntarily participating in the litigation in the Circuit Court of Cook County by issuing a letter of credit in connection with that litigation. Plaintiffs argue further, that if USNB remained solvent, the Clerk of the Court of Cook County would probably be able to collect on the letter in an action in an Illinois court pursuant to the Illinois long-arm statute, Ill.Rev.Stat. (1975) ch. 110, § 17. It follows, plaintiffs urge, that venue properly lies in the Northern District of Illinois. We disagree.

While the letter of credit may or may not be sufficient contact with Illinois to grant it long-arm jurisdiction, (*see Gray v. American Radiator & Standard Sanitary*, 22 Ill.2d 432, 176 N.E.2d 761 (1961)), and satisfy the requisite due process standard of minimum contacts, (*see International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945)), plaintiff cites no case in which the mere "doing of business" indicates waiver of 12 U.S.C. § 94 venue. In *Douglass v. Industrial National Bank of Rhode Island*, 30 Conn.Supp. 117, 303 A.2d 359 (1972) the court held that "doing business" in a state does not in itself manifest a bank's intent to waive its venue privilege. *Cf., Northside Iron & Metal Co. v. Dobson & Johnson, Inc.*, 480 F.2d 798, 799–800 (5th Cir. 1973) and cases cited therein.

Even if "doing business" qualifies as waiver of 12 U.S.C. § 94, a proposition of which this Court remains unconvinced, it is

not likely that USNB's conduct would be so deemed. We agree with defendants' characterization of USNB's connection with the Illinois litigation to be the same as if a "check drawn on a USNB account were used to settle a matter of litigation in Illinois." Defendants' Reply Memorandum at 3. Certainly, the letter of credit was not the subject matter of the state litigation.

We therefore hold that plaintiffs have not met their burden of proving that the USNB has waived its venue privilege. See, *Buffum v. Chase National Bank of City of New York*, 192 F.2d 58, 61 (7th Cir. 1951) *cert. denied* 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702 (1952); 34 Geo.Wash.L.Rev. at 778.

In light of our holding, the Court would not have to rule on defendants' contention that the cause should be transferred in the "interest of justice," pursuant to 28 U.S.C. § 1404(a). However, with numerous USNB letters of credit cases pending in the Southern District of California, this Court is further persuaded that in the interests of justice and judicial economy, the case should be transferred pursuant to 28 U.S.C. § 1404(a). See, *Freiman v. Texas Gulf Sulphur Company*, 38 F.R.D. 336 (N.D.Ill.1965) (Will, J.); *Schneider v. Sears*, 265 F.Supp. 257 (S.D.N.Y.1967).

Accordingly, defendants' motion to have this case transferred to the Southern District of California is granted.